IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William A. Henley, aka William Arthur Henley, fka William H. Henley, | Case No. 8:11-cv-01487-JFA-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| William Byars, SCDC Commissioner; Willie Eagleton, Evans Warden; Thomas Moore, SCDC Medical Director; Amy Smith, Evans Head Nurse; and B. Drego, Evans Medical Doctor, | |
| Defendants. | |

This matter is before the Court on cross motions for summary judgment filed by Defendants [Doc. 39] and Plaintiff [Doc. 57][1]. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, brings this action against William Byars, South Carolina Department of Corrections Commissioner ("Byars"); Willie Eagleton, Evans Warden ("Eagleton"); Thomas Moore, South Carolina Department of Corrections Medical Director ("Moore"); B. Drego, Evans Medical Doctor ("Drego"); and Amy Smith, Evans Head Nurse ("Smith; collectively, "Defendants") in their individual and official capacities. [Doc. 1.] Defendants filed their motion for summary judgment on November 4, 2011. [Doc. 39.] By Order filed November 7, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.

---

[1] Plaintiff captions his motion as a "motion for rule 56(f) (FRCP)." [Doc. 57.] The Court has construed this motion as a motion for summary judgment.

1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 40.] After the Court filed a second Order directing Plaintiff to respond [Doc. 63], Plaintiff filed a response on January 9, 2012 [Doc. 66]. Plaintiff also filed a motion for summary judgment on December 6, 2011. [Doc. 57.] Defendants filed a response on December 9, 2011. [Doc. 59.] The motions are ripe for review.

## **BACKGROUND**

Plaintiff, who is an inmate at the Evans Correctional Institution ("Evans"), generally alleges deliberate indifference to his medical needs relating to bone spurs and/or Achilles tendon issues and a urination dysfunction. [Doc. 1.] Specifically, Plaintiff alleges he was denied orthopedic shoes and a "urethre split" surgery. [*Id.* at 6–7.] Accordingly, Plaintiff asserts Defendants have violated Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. Plaintiff seeks

> (1) A declaration that the acts and omissions described [in the Complaint] violated Plaintiff's rights under the Constitution and laws of the United States.
>
> (2) A preliminary and permanent injunction ordering defendants William Byars, SCDC Director et. al to cease the discriminatory medical practice and allow the Plaintiff to see a urologist and orthopedic specialist.
>
> (3) Compensatory damages in the amount of $50,000.00 against each defendant, jointly & severally.
>
> (4) Punitive damages in the amount of $25,000.00 against each defendant.
>
> (5) A jury trial on all issues triable by jury.
>
> (6) Plaintiff's costs in this suit.

2

> (7) Any additional relief this court deem[s] just, proper, and equitable.

[*Id.* at 11.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any

3

> person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the

4

State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the

5

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

6

**DISCUSSION**

**Eleventh Amendment Immunity**

Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Deliberate Indifference to Medical Needs**

Plaintiff contends Defendants were deliberately indifferent to his serious medical needs by denying him proper treatment for his bone spurs and/or Achilles tendon issues and a urination dysfunction. [Doc. 1.] Defendants contend Plaintiff cannot establish liability for deliberate indifference to his medical needs because "[a]t most, Plaintiff had a

7

disagreement with Dr. Thomas Moore and the Evans Correctional Institution medical staff as to whether treatment for his bone spur condition and urination dysfunction condition was medically necessary or elective medical treatment." [Doc. 39-1 at 6.]

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-

8

6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

As an initial matter, the Court is not convinced Plaintiff's alleged medical needs constitute a sufficiently serious medical condition. "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing

*Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)). With respect to Plaintiff's allegations about bone spurs, Drego and Moore have averred that Plaintiff had previously been provided a pair of orthopedic tennis shoes, and the replacement pair of shoes Plaintiff now seeks is approved elective medical treatment as opposed to medically necessary treatment. [Docs. 39-3 ¶¶ 11–12; 39-4 ¶ 6.] With respect to Plaintiff's allegations about urination dysfunction, the medical evidence establishes Plaintiff underwent a cystoscope procedure on April 27, 2009 to look for any signs of stricture related to his complaints of voiding problems, including a slow start to his stream and a split stream. [Docs. 39-2 at 2 ¶ 7, 40; 39-3 ¶ 5.] The results of the cystoscope procedure came back normal with no stricture. [Docs. 39-2 at 2 ¶ 8, 40; 39-3 ¶ 5.] Plaintiff did not complain about his urination dysfunction again until January 21, 2010. [Docs. 39-2 at 2 ¶ 9, 33; 39-3 ¶ 6.] At that time, a lab referral was completed for urinalysis, and the results were all within normal limits. [Docs. 39-2 at 2–3 ¶¶ 9–10, 33; 39-3 ¶ 7.] Accordingly, the Court is not convinced Plaintiff's desire to receive new orthopedic shoes and surgery for his urination dysfunction amount to sufficiently serious medical needs mandating treatment.

However, even if Plaintiff could establish his medical needs were sufficiently serious, he cannot establish Defendants acted with a sufficiently culpable state of mind because evidence produced by Defendants precludes finding Defendants consciously disregarded a substantial known risk to Plaintiff's health or safety. With respect to Plaintiff's allegations about bone spurs, the medical records indicate Plaintiff was seen numerous times. A replacement pair of orthopedic tennis shoes is considered approved elective medical

treatment; accordingly, Plaintiff was notified of the channels he needed to pursue if he wished to arrange for the shoes to be shipped to him by an outside medical provider.[2] [Docs. 39-2 ¶¶ 11–12, 39-3 ¶¶ 11–12; *see also* Doc. 39-4 at 13–14 (policy outlining elective outside medical care).] Ultimately, Plaintiff complied with these procedures and was issued the shoes on October 31, 2011. [Doc. 39-5 ¶ 6.] With respect to Plaintiff's allegations about urination dysfunction, in an affidavit, Moore states that he disapproved further urological consult in May 2011 after reviewing Plaintiff's medical chart, which indicated Plaintiff had complained of similar symptoms before and received appropriate medical treatment and tests to rule out any physical obstruction or urinary tract infection. [Doc. 39-4 ¶ 5.] Because all previous diagnostic tests had come back as normal, ruling out any serious medical need, Plaintiff's request for a urological consult or correction of his split stream were considered elective medical treatments. [*Id.*; *see also* Doc. 39-3 ¶ 7–9.] A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even assuming Plaintiff's medical needs were serious and that a finding of negligence on the part of Defendants could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding the Due Process Clause is not implicated by a negligent act by a prison official that causes an unintended loss of or injury to life, liberty, or property); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of

---

[2] Plaintiff alleges Eagleton would not allow Plaintiff's family to send support tennis shoes from home and, therefore, Eagleton was deliberately indifferent to Plaintiff's medical needs. [Doc. 1 at 8.] Eagleton has averred Plaintiff's request to have tennis shoes sent from home was disapproved by Eagleton for security reasons because Evans and other institutions have had problems with medical equipment containing contraband when forwarded to the institutions from friends and family of inmates. [Doc. 39-5 ¶ 4.] Accordingly, Evans' policy is that any medical equipment or devices from outside sources must be provided to Evans directly from the medical provider. [*Id.*]

11

medical mistreatment under the Eighth Amendment."). As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice.[3] *See, e.g.*, *Jackson*, 846 F.2d at 817.

**Supervisory Liability**

To the extent Plaintiff bases his claims against Byars on the theory of supervisory liability, his claims are without merit.[4] Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to

---

[3] The Court notes that, in his motion for summary judgment, Plaintiff argues he could not obtain a declaration or affidavit from the urologist and did not have access to cases to support his arguments. [Doc. 57.] However, even accepting Plaintiff's version of the facts as true—that Defendants denied him replacement orthopedic shoes and surgery—he cannot establish Defendants were deliberately indifferent to his medical needs, as discussed above.

[4] Plaintiff includes the following allegations as to Byars:

> (7) Defendant, William Byars is the Department of Corrections, Director of the State of South Carolina. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Evans Correctional Institution.

[Doc. 1 at 4.] Liberally construing the Complaint, these allegations appear to state a claim based on supervisory liability of Byars.

> that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[5]

*Id.* (citations omitted).

In this case, Plaintiff has failed to establish a § 1983 claim based on a theory of supervisory liability. First, Plaintiff failed to show Byars had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Byars should have been aware. Second, Plaintiff failed to show Byars acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed above, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the treatment he received, Defendants were not deliberately indifferent to his medical needs. Finally, Plaintiff failed to establish a causal link between any inaction on the part of Byars and the alleged violation of Plaintiff's

---

[5] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

constitutional rights because Plaintiff failed to demonstrate Byars's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

**Qualified Immunity**

Defendants also are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate

that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

**State Law Claims**

To the extent Plaintiff attempts to allege state law claims in addition to his § 1983 claim, such state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[6] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 1, 2012
Greenville, South Carolina

---

[6] A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.